This video was recorded on September 1st, 2013 at the Munchkins' home in St. Louis, CA. This video was recorded on September 1st, 2013 at the Munchkins' home in St. Louis, CA. This video was recorded on September 1st, 2013 at the Munchkins' home in St. Louis, CA.  This video was recorded on September 1st, 2013 at the Munchkins' home in St. Louis, CA.  In order for this Court to affirm, it has to rule for Munchkin on all three. The first issue that I'd like to address is the third oval. The issue here is twofold. One is fair notice, and secondly, was there substantial evidence to support this? On the notice issue, I want to read one sentence to you from the trial practice guide. It's quoted in the blue brief at page 33. Any claim or issue not included in the authorization for review will not be part of the trial. The judge who wrote the opinion admitted at oral argument that this was a new subject. The lawyer, my predecessor, said this is a new issue, and he would think about it during his recess at final argument. When you come to final argument in an IPR, all the evidence is in. He doesn't have time to go get an expert declaration or develop any new evidence. The question of the third oval came out of the blue. It should not have been part of this proceeding at all. I also showed the institution for the IPR specifically pointed to these two figures, right? Figure 3 of the 465 and figure 12A of the 106 application. And then pointed out that it didn't find written description support in figure 12A, and then said there were a couple different examples. And then for at least those reasons, at least for those examples provided when you compare these two figures, there's no written description support. Isn't that notice to let your client know that he needs to figure out a way to match up his figure 3 against the 106's figure 12A? Absolutely not. The institution of trial pointed to two specific things. One was slits, one was racetrack versus oval shape. If the patent owner had to figure out every single thing that might come up later at the final argument, that would be very unfair, I think. I think that this was an unfair surprise. I think that it is – oh, I don't want to use a harsh word. I believe that that is not a proper statement of notice of the issues as to which this trial was to proceed. If Love and Care had noticed that there was an issue as to the third oval, then Love and Care would have developed some evidence. They might have gotten an expert declaration to show why the utility patent application drawings justified that third oval. In our briefs, we showed you a few reasons why we think that those drawings of the parent application support the existence of the third oval, the outer oval, which to me appears to be a contour line. Can you tell us – I got a little confused. The third oval line, does it represent the base of the spout, or does it represent perhaps the outer contour line of the spout tip? Which position is it that you're taking? I think first we need to agree on what we're going to call the spout, because the board called the spout the whole upper part, and I called the spout the part that sticks up. The part that sticks up is what the board called the drinking tip. Now, I call it the spout. If you want to call it a drinking tip, that's fine with me. What I thought in the blue brief is that that third outer oval represents the bottom of the drinking tip, not the outside of the whole lid, but the bottom of the drinking tip. And you can see from the drawings of the parent case that it gets narrow as it comes up. And so you would expect when you look down that you're going to see the inside ring for the inside. There's going to be another oval representing where the top is. And then if you go down, it's obviously going to be wider. And a person, a draftsman presenting design patent drawings is going to want to show a contour line. That's what I thought it was. Now, in the red brief, I said, oh, no, I can't possibly be that, and it has to be the top. So in my gray brief, I said, well, if you insist on it being the top, I have support anyway, and I showed a diagram in the gray brief that says here's where I can justify that third line if you even want to confine it to the top. The point is... Do you understand why that's a little scary in the sense that a patent owner can sort of twist in the wind and assert various conceptions of what the meanings of the lines are in their design when accused infringers can't really know what those lines represent until the patent owner decides what those lines mean? Of course, I understand the point, and you're thinking of the nose of wax case, I imagine. And the point is that I am discussing what could have been done at the PTAB if the appellant had noticed that there was an issue. We could have gotten expert testimony as to exactly what that line is. I'm saying we deserve a chance to have it. I'm saying there are possibilities here that were never allowed to be explored because my client didn't even know it was an issue. And I think that's very unfair. I think that is violative of the Due Process Clause and the Administrative Procedures Act. Why does Figure 12a not have that additional oval line? It just has what appears to be a single oval or a single racetrack. I would imagine that it is because it is a utility patent application, not intended to show every aspect of the design with the kind of meticulous care that a design patent would have. And the question that we have on Section 120 is whether I can, not I, whether Love and Care can find support anywhere in the parent application. And that's another mistake made by the PTAB. The PTAB said there's no support in Figure 12a. Your Honor, that is legally insufficient. It is not true that if a specific feature is missing from one figure, that means it's missing from all the figures. The law is very clear that you can find support anywhere in the parent application. And I showed several different drawings. There are about six different drawings that show these features. So I find, in my opinion, that there is substantial merit to the third oval. And moving on, the size and shape issues, the red brief never even answered our showing as to the size of the ovals. The shape issue, as set forth in the Decision Institute, was is it a racetrack or is it an oval, i.e. an egg shape. And when I blow up the figures from the parent application, I see ovals. I don't see racetracks. And by racetrack, I mean two straightaways connected by a curve at each end. And I gave you a couple of photographs from, I think one was an automobile racetrack and the other was a horse racetrack. That's not what you see when you blow up the figures from the parent application. You see ovals. And as for the size of those ovals, I showed you in the blue brief a range that was covered by the parent application. And I compared it to the range that is shown in the design application and it fits right in. And I would submit to you that this shows that the inventor was in possession of that shape as of the filing date of the parent application. Written description support is a question of fact, right? It is. And if you're asking about the substantial evidence test, the question here is that the substantial evidence test is subservient to the issue of law. You can say, as I mentioned before, that maybe I don't see substantial evidence for an oval looking at figure 12A. Now, I would submit to you that that's wrong. But when I look at the rest of the figures, I do find that there is substantial evidence to support the appellant's position. And for the PTAB to say, I failed to find substantial evidence in figure 12A to support the oval, well, okay, let's arguendo say that's true. I say that's legally insufficient. That's not enough to rule against us. On the third issue is the question of who had the burden. We all agree the burden of proof by statute is fixed on the petitioner. Just so you know, you're near rebuttal time. I'll wrap up in seconds. It's up to you. Thank you, Judge. In the final hearing, Mr. Poplin told the PTAB that it was our burden, the appellant's burden, to show justification for the support. And remember that we have a motion pending to take judicial notice. The cases that are cited say that the burden of going forward shifts once the challenger has met its burden. I say they didn't meet their burden because they didn't produce any evidence, and therefore the burden never shifted. But even if it did shift, even if we do have that problem, the case law says, but it doesn't shift when this issue was taken up by the examiner in the original prosecution. And it was. It was the very first office action. Now that wasn't in the record because this issue didn't come up until after the final hearing. So I moved to have the file history added by judicial notice. And if you look at it, it shows the first office action, the examiner said lack of section 120 support. The applicant answered that, and the examiner withdrew the rejection. That shows that this was handled already by the examiner, and the law of this court is that under those circumstances, the burden of production does not shift. It stays on the challenger throughout. What is the standard for granting an inter partes review? Reasonable likelihood of success as to at least one claim being invalid. Okay. So I take that to mean that the patent board, the panel that reviewed the case, determined that there's a reasonable likelihood of success in rejecting these claims because the claims are not entitled to the utility application's filing date. And that's because there is a lack of written description support. Is that a fair reading of what the Decision Institute said and did? With the sole exception that there's only one claim in a design patent, yes. But that is not a finding. That is a preliminary ruling. And even if the patent owner didn't show up, the PTAB would require the petitioner to come forward and prove its case. That's not a finding that shifts the burden. If I may preserve the rest of my time for rebuttal. Thank you, Your Honors. May it please the Court, good morning. I'm Justin Poplin. I play for Engage here today for Munchkin. I'd like to start with the unfair surprise issue. Love and Care made a taskful decision in this case to pursue amendments at the Patent Office and not to seriously pursue the 120 priority date of the patent issue. The specific grounds upon which the Patent Office's decision was based have been in this case since day one. I'd like to run through the history very briefly if I might. In the petition at 841 to 843, Munchkin argued that there was no priority because of an inconsistent internal style configuration and inconsistent external style configuration. Munchkin described in detail the differences between the oval and regular-like shapes. Munchkin also described the three concentric rings. If you look at the annotated figure from the petition, I believe at 843, it points to the two inside lines as the internal configuration. From day one, that's been Munchkin's position. Did Munchkin point out the larger third oval ring? Yes, Judge. That was the external configuration. That can also be found at 841 to 843. In the institution decision then at 897, the board found that there likely was not priority and it said, quote, for example, unquote, for at least these reasons. And it provided two examples of why there was likely no priority. The board did not say these are the only issues of this case. Instead, the board found that the issue, or excuse me, the issue here was whether or not the claim was invalid under Section 103. 120 is not a ground of rejection. 120 is kind of a sub-finding in this case. But the board specifically found that there was likely no priority. Moving on, in the context of Levencare's motion to amend in their response, at A131 and 132 and A140, Levencare acknowledged the size, shape, and proportions were not consistent between the 106 and the 465. And those words are taken directly from their papers. Size, shape, and proportions. They then attempted to amend their drawings to match those of the parent. The proposed amended drawings are shown in context at A129. Then Levencare's demonstrative at the board's hearing, A233, and this was originally filed as Exhibit 2003 in this case, with Levencare's reply, clearly shows three concentric rings as a tip. During oral argument at A273 to 275, Judge Fitzpatrick and Levencare's attorney discussed the three concentric rings and the 465 as the spout tip. Then in the final decision at A7, the board found that there was no priority because of spout size, spout shape, and the inconsistent internal configuration, or the three rings. These issues have been in the case since day one. There's no surprise here. Levencare simply chose... But Levencare's attorney at the oral hearing said it was a new issue. But Judge, it was in the petition. It's not a new issue. And the fact that the attorney at the oral hearing said it was does not make it true. This has been in the case since day one. And it's very clear from... Again, if we look at the petition, A41 to A43, much confirmed day one indicated there was an inconsistent internal configuration. Did your briefing, that last stage briefing before the oral hearing, identify all three of these alleged defects? I believe... And more, Judge. I believe we referred back... Maybe others, but each one of these three. In the sense that now the patent owner knows that you're going to be attacking the written description angle on a whole bunch of elements, but at least these three elements as well that the board ultimately picked up on. Yes, Judge. I believe we referred back in our briefing to all of the original issues raised in our initial petition. We did not go through those in detail again because of space limitations at the patent office. But we very clearly referred back to those. There was no indication that Munchkin had given up on these issues or that these were somehow not part of the case any longer. I'd like to continue to the burden issue. Power Oasis and technology licensing make it very clear that once a challenger has established a prima facie case of invalidity using a reference that predates the filing date, the patentee is then obligated to come forward with evidence and argument that it is entitled to an earlier priority date. Now, the overall burden of persuasion never moves, and we clearly can see that. That's always on the petitioner, the challenger. However, that burden of going forward with evidence and arguments does go back and forth between the parties, and it goes back and forth just as Munchkin has explained. This builds a record on which the case can ultimately be decided. I'm not sure how burden shifting really works in this particular circumstance in these AIA proceedings in the sense that it seems to me the board is letting the parties know that certain issues are live issues, and both parties need to focus and put their best foot forward through briefing and evidence on a respective live issue, and then the board is going to ultimately make findings on that live issue in a final written decision. And then from our perspective, it all comes down to whether there was substantial evidence in the record to support that fact finding. So I don't see it as the standard iterative process in the agency where burdens go toggle back and forth. I mean, what do you think about that? I believe it is, Judge. I believe that Judge Fitzpatrick and the board below found that it was. Now, I think that the patent owner at the board has even a leg up because these issues are raised sooner. Munchkin in his petition explained why there was no priority, which would not have been required in a court case under Power Oasis and technology licensing. But we do have to have a good case at the institution phase, and the board does have to determine the reasonable likelihood that we'll win. So the petitioner is going to raise these issues in detail much sooner, which provides additional information at an early date for the patent owner. But I don't think that changes the burden of producing evidence and arguments. I think that that's still safe to say. I don't see a real reason why that should be different at the board. I really see this similar to secondary considerations, where once there's a prima facie case of obviousness, the patentee must raise the issue and must also produce evidence and arguments regarding nexus. I see it to be a very similar issue. And the case that I point to there is MRC Innovations, which is a 2014 case from this court. We also disagree, Love and Care and Munchkin, on the deference issue. Now, courts will accord deference to patent office proceedings on the issue of priority date if the patent office has actually considered and addressed the issue. That deference arises because the patent office is presumed to be a government agency that properly did its job. The patent office, however, where this case came from, does not accord deference. And that couldn't be more clear from the presidential patent office case, in Ray Fry from 2010. That case was joined by Director Kapos and Chief Patent Judge Michael Fleming. The patent office does not accord deference. Moreover, if deference somehow were afforded, which it should not be, we should also consider the patent history, the file history, so the related reexamination, the 439 patent. This was a record and it was cited in pages 16 to 17 of the petition. There, the patent office found that the oval spout of the 465 is different from the racetrack spout of the 106. In fact, the later 439 patent, which had a racetrack-shaped spout, was denied priority of the 465 patent, which was found to have an oval spout. So at worst, there were two determinations and nothing for the patent office to have given deference to. Although, again, deference simply does not apply to the patent office. What's your response to the other side's argument that the board was too narrow in its inquiry on written description by focusing only on Figure 12A and, in fact, there's other parts of the 106 application that once you consult those, in addition to Figure 12A, you can see and understand that there was possession of the drawings in the 465? We made the argument below, Your Honor, I believe it's entirely correct, that the 106 is all over the board and actually does not provide basis for any single embodiment. The written description in the 106 tells us that these pictures are all of, the drawings are all of the same product, but they're all different. We can't match them up and actually get 112 support for anything out of that parent 106 application. And, no, I don't believe that the patent office was too narrow. I believe the patent office was entirely correct to look at the drawings and say that they're very different and that 112 support cannot be found in the parent and, therefore, 120 priority should be denied. Looking at the ultimate determination regarding priority, this is a factual issue that's reviewed for substantial evidence. And if we look back at the case, if we look back at Love and Care's amendments and their statements along with the amendments, it's clear from that record that there's substantial evidence that supports the patent office's findings. Love and Care itself, again, please remember, admitted that the size, shape, and proportions were different between the two and actually attempted to amend the figures to match that of the parent. This also goes to the notice issue. There's not some outrageous burden for Love and Care to prove 112 priority that's completely unattainable because in its context of amendment, Love and Care was able to clearly identify differences between the 106 and the patented issue and explain those differences and try to amend the drawings to match up with the parent. They simply chose not to pay attention to these differences in the context of the patent as originally issued. And this is a completely new argument and tact and it's a different way to go about it now on appeal. If you look at the briefing, they spent just over a page addressing the original patent as issued in all their briefings as far as why it should have 10 priority. And that was largely directed to the text. The text that said it could be an oval. If that's all that's required, then every design patch should be filed claiming priority to a utility. This simply defines the product in very broad terms. If all I have to do is say it can have an oval-shaped tip of any size and that provides me section 112 priority, then I'd almost have to do a utility application of that type before filing a continuation design. The judicial notice of the file history, since there's no deference, we believe it's clearly irrelevant as well as untimely. Again, Love & Care did not bother to introduce it below. They weren't interested in priorities below for the patent as issued. They're really interested in the amendments. If there are no further questions, I'd be happy to give the remainder of my time back. Okay. Thank you so much. Thank you. Your Honors, I don't think I'll take the rest of my time either. When I look at page A42-43, I don't see anything about attacking the third oval. I don't see at page A31 where Love & Care admitted differences. What I do see is an assertion that the amendment was proposed to more closely align to the apparent case. I do not believe it is proper to go out of the record to refer to what is going on in an ongoing re-examination, as Mr. Propplin has done. The case he cited in Ray Fry is not discussed in the briefs. I do not see that LNC admitted that there are differences in size, shape, and proportions. As to the motion to amend and what much is made of that, we did not appeal that because my predecessor did not make all the necessary showings. That motion was doomed. Among other things, my predecessor did not show why it's patentable, did not put all the prior art of which it was aware in front of the Board. The Board could have rejected that motion on a number of grounds. To state that we devoted only one page with regard to the oval is to close your eyes to the rest of the brief. There are several pages showing the ovals, blown up, and a page, I think, showing six of the figures from the apparent case and showing that they're oval. It's not just relying on the textual portion of the apparent case that says they're oval. I've actually showed you the drawings and you can see that they are egg-shaped ovals, not racetracks. I believe that this Court should either reverse or remand this case. Are there any questions? Then I have nothing further to say. Thank you for your attention.